IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MARK EDWIN GUIDA                      §
TDCJ No. 1984879                      §
                                      §
              Petitioner,             §
                                      §
V.                                    §           No. 3:20-cv-00390-B-BN
                                      §
DIRECTOR, TDCJ-CID                    §
                                      §
              Respondent.             §


**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Mark Edwin Guida, a Texas prisoner, was convicted by a jury in
Dallas County of murder. *See State v. Guida*, F-1263747-V (292nd Dist. Ct., Dallas
Cnty. Tex. Dec. 4, 2014); Dkt. No. 11-1 at 3. The jury sentenced him to 99 years'
imprisonment. *See id*. The convictions and sentence were affirmed on direct appeal.
*See Guida v. State*, 05-14-01626-CR, 2016 WL 2905147, at *8 (Tex. App. – Dallas May
13, 2016, pet re'd). The Texas Court of Criminal Appeals ("TCCA") subsequently
refused his petition for discretionary review ("PDR") on January 11, 2017. *Guida v.
State*, PDR No. 0638-16 (Tex. Crim. App. Jan. 11, 2017).

Guida then filed a state habeas application, which the TCCA denied without
written order on the findings of the trial court without a hearing and on the court's
own independent review of the record. *See Ex parte Guida*, WR-88-538-01 (Tex. Crim.
App. Feb. 12, 2020); Dkt. No. 11-1 at 11.

1

Guida now asserts, through a timely *pro se* application for a writ of habeas corpus under 28 U.S.C. § 2254, that he is entitled to federal habeas relief. *See* Dkt. No. 3; Dkt No. 4.

United States District Judge Jane Boyle referred the Section 2254 application to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference. The State responded to Guida's application, *see* Dkt. No. 11, and Guida replied, *see* Dkt. No. 13.

The undersigned then ordered the parties to provide supplemental briefing related to (1) the substantive merit of Guida's claims that his Fourth Amendment rights were violated pursuant to an unreasonable search and seizure of his cell-phone and that his trial counsel was ineffective for failing to file a motion to suppress related to that search and seizure, and (2) whether Guida had procedurally defaulted the claim that his Fourth Amendment rights were violated pursuant to an unreasonable search and seizure of his cell-phone and that his trial counsel was ineffective for failing to file a motion to suppress related to that search and seizure. *See* Dkt. No. 15. The parties complied. *See* Dkt. Nos. 16, 17.

The undersigned also ordered the State to file a copy of the video of Guida's initial interrogation during which the alleged unreasonable cell-phone search occurred, which was introduced as State's Exhibit 53 at Guida's trial. *See* Dkt. No. 18. The State filed a copy of "volume 2" of the State's Exhibit 53. *See* Dkt. Nos. 19-20.

For the following reasons, the Court should deny Guida's federal habeas petition.

2

**Legal Standards**

"Federal habeas features an intricate procedural blend of statutory and caselaw authority." *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019). In the district court, this process begins – and often ends – with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), under which "state prisoners face strict procedural requirements and a high standard of review." *Adekeye*, 938 F.3d at 682 (citation omitted).

Under the AEDPA, where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Adekeye*, 938 F.3d at 682 ("Once state remedies are exhausted, AEDPA limits federal relief to cases where the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or was 'based on an unreasonable determination of the facts in light of the evidence presented.'" (citation omitted)); *see also Allen v. Vannoy*, 659 F. App'x 792, 798-99 (5th Cir. 2016) (per curiam) (describing Section 2254(d) as "impos[ing] two significant restrictions on federal review of a habeas claim ... 'adjudicated on the merits in state court proceedings'").

And "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see also Sanchez v. Davis*, 936 F.3d 300, 305 (5th Cir. 2019) ("[T]his is habeas, not a direct appeal, so our focus is narrowed. We ask not whether the state court denial of relief was incorrect, but whether it was unreasonable – whether its decision was 'so lacking in justification' as to remove 'any possibility for fairminded disagreement.'" (citation omitted)).

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the [AEDPA] prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

"A state court unreasonably applies clearly established Supreme Court precedent when it improperly identifies the governing legal principle, unreasonably extends (or refuses to extend) a legal principle to a new context, or when it gets the principle right but 'applies it unreasonably to the facts of a particular prisoner's case.'" *Will v. Lumpkin*, 978 F.3d 933, 940 (5th Cir. 2020) (quoting *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000); citation omitted)). "But the Supreme Court has only

clearly established precedent if it has 'broken sufficient legal ground to establish an asked-for constitutional principle.'" *Id.* (quoting *Taylor*, 569 U.S. at 380-82; citations omitted).

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted); *see also Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon" (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was

5

unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable.

*Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).

This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (Section 2254(e)(1) "'deference extends not only to express findings of fact, but to the implicit findings of the state court.' As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." (footnotes omitted)).

And, even if the state court errs in its factual findings, mere error is not enough – the state court's decision must be "*based* on an unreasonable factual determination. … In other words, even if the [state court] had gotten [the disputed] factual determination right, its conclusion wouldn't have changed." *Will*, 978 F.3d at 942.

Further, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Richter*, 562 U.S. at 98; *see also Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); *Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion 'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. That is, a petitioner must, in sum, "show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans*, 875 F.3d at 217.

## Analysis

Guida makes the following claims in support of his federal habeas application:

(1) his Fourth Amendment rights were violated when the lead detective

searched his cell phone during an interrogation without a warrant, and his trial counsel was ineffective for failing to file a motion to suppress the evidence discovered as a result of the search;

(2) his Fourth Amendment rights were violated when cell-site location information was obtained from the wireless carrier without a warrant;

(3) he was denied effective assistance of trial counsel because his trial counsel failed to request a *Daubert* hearing to determine if the State's expert's scientific testimony was reliable;

(4) he was denied effective assistance of trial counsel because his trial counsel failed to investigate or hire an expert witness to testify regarding cell-phone tower technology;

(5) he was denied effective assistance of appellate counsel because his appellate counsel did not argue that he was deserving of his *Miranda* rights because he was a suspect at the time of his initial interrogation;

(6) he was denied effective assistance of trial counsel because his trial counsel did not request a *Franks* Hearing;

(7) his due process rights were violated because the victim's son testified differently in his forensic interview than he did at trial; and

(8) the State withheld impeachment evidence.

*See* Dkt. No. 3; Dkt. No. 4.

9

## A. Ineffective Assistance of Counsel ("IAC") Claims

### (i) *Failure to File Motion to Suppress Information Obtained from Cell Phone Search*

Guida claims that his Fourth Amendment rights were violated when the lead detective "snatched" his cell phone from his hands without a warrant prior to his arrest during an initial interrogation, and that the information that he garnered – records of a transaction at a gas station – prompted the lead detective to get video footage from that gas station that showed Guida purchasing two gas cannisters hours before the victim was found in a burning vehicle, which ultimately led to his arrest. *See* Dkt No. 3 at 6; Dkt. No. 4 at 3. Guida claims that his trial attorneys were, in turn, ineffective for not filing a motion to suppress the gas-station video footage. *See* Dkt. No. 4 at 4.

To the extent that Guida is making an independent Fourth Amendment claim, its merits are addressed below.

As to the IAC claim, the State argues that it is procedurally defaulted and substantively meritless.

A petitioner must fully exhaust state remedies before seeking federal habeas relief. 28 U.S.C. § 2254(b). To properly satisfy the exhaustion requirement, the factual and legal bases for a claim must first be fairly presented to the highest state court for review. *See Campbell v. Dretke*, 117 F. App'x 946, 957 (5th Cir. 2004) ("'The exhaustion requirement is satisfied when the substance of the habeas claim has been fairly presented to the highest state court so that a state court has had a 'fair opportunity to apply controlling legal principles to the facts bearing on the

10

petitioner's constitutional claim.'" (quoting *Soffar v. Dretke*, 368 F.3d 441, 465 (5th Cir. 2004))); *see* 28 U.S.C. § 2254(b)(1)(A). That court in Texas is the TCCA.

To fairly present a claim, its factual and legal basis must be presented to the state court in a procedurally correct manner. *See*, *e.g.*, *Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993). And a claim is not fairly presented for exhaustion purposes if it is raised in a "procedural context in which its merits will not be considered unless there are special and important reasons therefor." *Castille v. Peoples*, 489 U.S. 346, 351 (1989) (quotation marks omitted).

Unexhausted claims should be found procedurally barred if "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). Texas law precludes successive habeas claims except in narrow circumstances. *See* TEX. CODE CRIM. PROC. art. 11.07, § 4. This is a codification of the judicially-created Texas abuse-of-the-writ doctrine. *See Barrientes v. Johnson*, 221 F.3d 741, 759 n.10 (5th Cir. 2000). Under this state law, a habeas petitioner is procedurally barred from returning to the Texas courts to exhaust his claims unless the petitioner presents a factual or legal basis for a claim that was previously unavailable or shows that, but for a violation of the United States Constitution, no rational juror would have found for the State. *See id.* at 758 n.9. Therefore, unexhausted claims that could not make the showing required by this state law would be considered procedurally barred from review on the merits in this Court unless an exception is shown. *See Beazley v. Johnson*, 242 F.3d 248, 264 (5th Cir. 2001).

11

An exception to this bar allows federal habeas review if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Failure to raise a claim in an initial state habeas corpus application may not be excused for cause unless the claim was not "reasonably available" at the time of the prior petition. *Fearance v. Scott*, 56 F.3d 633, 636 (5th Cir. 1995) (internal quotation marks and citation omitted).

"To show cause, a petitioner must show that 'some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Gonzales v. Davis*, 924 F.3d 236, 242 (5th Cir. 2019) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). And to show prejudice, a petitioner must show that the error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis omitted). "And a miscarriage of justice in this context means that the petitioner is actually innocent of the crime of which he was convicted." *Gonzalez*, 924 F.3d at 242 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992)).

Guida claims that he presented this IAC claim in state court through a motion to amend his state habeas petition, which he filed with both the TCCA and the habeas trial court. *See* Dkt. No. 12-39 at 1-6; Dkt. No. 16-3. He filed the motion to amend first with the TCCA on August 15, 2018 – after the writ application had been initially forwarded to the TCCA and after the TCCA had remanded the case back to the trial

court for further fact finding. *See* Dkt. No. 12-39 at 1; *see also* TEX. CODE CRIM. PROC. art. 11.07. The TCCA "dismissed" the motion to amend on August 20, 2018. *See id.* at 2. Guida then filed the motion to amend with the habeas trial court on August 23, 2018, and there is no indication that that court ever considered it. *See* Dkt. No. 16-3.

The State argues that the claim was not fairly presented to the TCCA because the motion to amend was not filed in accordance with Texas law. It argues that Texas law does not "authorize a petitioner to file habeas documents directly with the Court of Criminal Appeals, nor does it contemplate that the petitioner will file additional documents after the district court clerk has forwarded the case to the Court of Criminal Appeals." Dkt. No. 11 at 9. In support, the State notes that the TCCA dismissed the motion to amend, and, in Texas habeas proceedings, it is the trial judge who "is the collector of evidence, the organizer of the materials, the decision maker as to what live testimony may be necessary, the factfinder who resolves disputed factual issues, the judge who applies the law to the facts, enters specific findings of fact and conclusions of law, and may make a specific recommendation to grant or deny relief." *Ex parte Simpson*, 136 S.W.3d 660, 668-669 (Tex. Crim. App. 2004).

Guida, for his part, does not seem to contest that the initial motion to amend filed directly with the TCCA was procedurally improper. But he does argue that the motion to amend was properly filed with the habeas trial court and that he should not be punished for the fact that that court simply failed to act on it.

The undersigned concludes that the IAC claim related to the alleged warrantless cell-phone search at the initial interrogation is procedurally defaulted.

13

It is axiomatic that, to exhaust a claim for purposes of federal habeas review, the legal and factual bases of the claim must first be presented to the highest state court. *See O' Sullivan v. Boerckel*, 526 U.S. 838, 842-48 (1999). That simply did not happen here. Guida attempted to present this claim to the TCCA by filing a motion to amend. But that motion to amend was denied because there is no provision of Article 11.07 or the Rules of Appellate Procedure permitting a party to file evidence or habeas petitions directly with the TCCA. *See*, *e.g.*, *Ex parte Pena*, 484 S.W.3d 428, 430 (Tex. Crim. App. 2016); *see also* TEX. CODE CRIM. PROC. art. 11.07 (describing a process by which applications for writs of habeas corpus are first filed with the trial court and then forwarded to the TCCA). And although Guida filed a subsequent motion to amend with the trial court, it was not granted. The undersigned has located no authority – nor have the parties provided any – for the proposition that a petitioner fairly presents a claim to the TCCA by filing an unresolved motion to amend with the habeas trial court. And Guida does not argue that the habeas trial court's apparent failure to decide the motion to amend is cause excusing the procedural default.

But Guida does argue that he can establish cause for the procedural default under *Martinez v. Ryan*, 566 U.S. 1 (2012), which was made applicable to Texas habeas petitioners in *Trevino v. Thaler*, 569 U.S. 413 (2013). To establish cause under *Martinez*, Guida must show that "(1) the claim of 'ineffective assistance of trial counsel' was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the 'initial' review proceeding in respect to the

ineffective-assistance-of-trial-counsel claim; and (4) state law *requires* that an 'ineffective assistance of trial counsel [claim]…be raised in an initial-review collateral proceeding.'" *Trevino*, 569 U.S. at 422 (citing *Martinez*, 566 U.S. at 13-15). For purposes of the *Martinez* exception, an IAC claim is "substantial" when it has "some merit." *Rayford v. Stephens*, 622 F. App'x 315, 332 (5th Cir. 2015) (per curiam) (citations omitted).

Ultimately, Guida fails to show that this IAC claim has some merit, so it is not a "substantial" IAC claim, and the *Martinez* exception does not apply.

The Court reviews the merits of IAC claims, whether directed at trial or appellate counsel, under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984), under which a petitioner "'must show that counsel's performance'" – "'strongly presume[d to be] good enough'" – "'was [1] objectively unreasonable and [2] prejudiced him.'" *Coleman v. Vannoy*, 963 F.3d 429, 432 (5th Cir. 2020) (quoting *Howard v. Davis*, 959 F.3d 168, 171 (5th Cir. 2020)).

To count as objectively unreasonable, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland*'s first prong is satisfied" (citation omitted)). "And to establish prejudice, a defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different.'" *Andrus v. Texas*, 140 S. Ct. 1875, 1881 (2020) (per curiam) (quoting *Strickland*, 466 U.S. at 694).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003); *see also Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) ("[B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" (quoting *Strickland*, 466 U.S. at 689)).

And, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's

denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105); *see also Sanchez*, 936 F.3d at 305 ("As the State rightly puts it, we defer 'both to trial counsel's reasoned performance and then again to the state habeas court's assessment of that performance.'" (quoting *Rhoades*, 852 F.3d at 434)).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010); *Adekeye*, 938 F.3d at 682.

Where the state court has adjudicated claims of ineffective assistance on the merits, this Court must review a habeas petitioner's claims under the "doubly

deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *compare Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)), *with Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)). In other words, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland*. *See id.* at 101-02. Instead, on federal habeas review of a *Strickland* claim fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves

review under the *Strickland* standard itself." *Id.* at 101.[1]

In the context of an IAC claim premised upon a motion to suppress, "[a] failure by counsel to file motions does not *per se* constitute ineffective assistance of counsel." *Rose v. Johnson*, 141 F.Supp.2d 661, 684 (S.D. Tex. 2001) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 383-84 (1986)). A determination of ineffectiveness "depends on whether either a suppression motion or an objection would have been granted or sustained had it been made." *United States v. Oakley*, 827 F.2d 1023, 1025 (5th Cir. 1987). More specifically, the petitioner must show "that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual

---

[1] *See also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 571 U.S. at 22, 15)); *Adekeye*, 938 F.3d at 683-84 ("The Supreme Court standard on prejudice is sharply defined: 'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' [A petitioner] must show it was 'reasonably likely' the jury would have reached a different result, not merely that it could have reached a different result. The Court reaffirmed this point in *Richter*: 'The likelihood of a different result must be substantial, not just conceivable.' Now layer on top of that the habeas lens of reasonableness. [Where] the state court has already adjudicated [a petitioner's] ineffective-assistance claim on the merits, he must show that the court's no-prejudice decision is 'not only incorrect but "objectively unreasonable."' Put differently, [he] must show that every reasonable jurist would conclude that it is reasonable likely that [a petitioner] would have fared better at trial had his counsel conducted [himself differently]. 'It bears repeating,' the Supreme Court emphasized in *Richter*, 'that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" (footnotes omitted)).

prejudice." *Kimmelman*, 477 U.S. at 375. And "[t]he filing of pre-trial motions 'falls squarely within the ambit of trial strategy.'" *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985) (quoting *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984)).

With those legal standards in mind, Guida fails to show that the suppression motion had merit and would have been granted. The Fourth Amendment commands that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." "The exclusionary rule provides the typical remedy for Fourth Amendment violations: suppression of the evidence at trial." *United States v. Mendez*, 885 F.3d 899, 909 (5th Cir. 2018) (citations omitted). "The exclusionary rule reaches not only the evidence uncovered as a direct result of the violation, but also evidence indirectly derived from it – so-called 'fruit of the poisonous tree.'" *Id.* (citing *Utah v. Strieff*, 579 U.S. 232, 237 (2016); quoting, in turn, *Segura v. United States*, 468 U.S. 796, 804 (1984); and citing *Nardone v. United States*, 308 U.S. 338, 341 (1939)).

But the exclusionary rule is subject to three exceptions: independent source, inevitable discovery, and attenuation. *See id.* (citing *Strieff*, 579 U.S. at 237); citing, in turn, *Murray v. United States*, 487 U.S. 533, 537 (1988); *Nix v. Williams*, 467 U.S. 431, 443-44 (1984); *Hudson v. Michigan*, 547 U.S. 586, 593 (2006))." Essentially, the independent source doctrine allows fruit-of-the-poisonous-tree evidence when "the police have acquired that evidence through a distinct, untainted source." *See United*

*States v. Grosenheider*, 200 F.3d 321, 328, n.8 (5th Cir. 2000) (citation omitted). The inevitable discovery doctrine allows for the "admission of evidence that would have been discovered even without the unconstitutional source." *Strieff*, 579 U.S. at 238 (citing *Nix v. Williams*, 467 U.S. 431, 443-444 (1984)).

Turning to the merits of the claim, Guida alleges that "during his interview/interrogation, while Petitioner was putting together a timeline for his whereabouts on the day of the crime, Detective Ellzey reached over the table, said 'Let me see this,' and grabbed Petitioner's cell phone out of his hand and proceeded to look at the data stored in the cell phone. He made notes from off of Petitioner's cell phone. One entry he noted was an ATM withdrawal of the Race Track Gas Station." Dkt. No. 4 at 3.

Guida claims that the illegal search was captured on a video of his interrogation. Dkt. No. 3 at 6. And the state court record shows that a copy of the video Guida references was viewed by the Court in connection with a suppression hearing focused on the admissibility of statements Guida made prior to arrest. *See* Dkt. No. 16-2 at 5. But it does not appear that the interrogation video was introduced as evidence at that hearing. *See generally id.* The State did introduce a DVD entitled "Mark Guida Interview" at trial, which was State's exhibit 53. And, looking at the trial transcript, this appears to be the video that Guida is referencing. *See* Dkt. No. 12-23 at 42-43 (describing the video as showing Guida filling out his timeline). It is not clear from the trial transcript whether the video showed the alleged search of Guida's phone. At any rate, the undersigned ordered the State in these proceedings

21

to file a copy of State's Exhibit 53 at trial. *See* Dkt. No. 18.

In response, the State filed "volume 2" of State's Exhibit 53, which begins after Guida has been arrested and therefore does not capture the alleged search of the cellphone or the interaction leading up to that. Thus, the undersigned has not relied on "volume 2" of State's Exhibit 53 for purposes of its analysis.

It is not clear why the State only submitted volume 2 of Exhibit 53. Assuming that the State is unable to obtain a copy of "volume 1," other parts of the state court record tend to show that Guida's description of events is either controverted or missing details. As noted, Guida's counsel filed a motion to suppress, oral argument of which focused on whether the State failed to provide Guida with his *Miranda* rights when he was in custody. *See* Dkt. No. 16-2 at 6. At that hearing, the lead detective testified as follows:

Q.    You asked him a couple of questions and he pulls out his cell phone and he is looking through it; is that accurate?

A.    Seems like it is regarding financial probably.

Q.    Do you recall saying let me see that and taking it out of his hand?

A.    Yeah, because he couldn't read it to me.

Q.    Well, he's holding his cell phone looking at his financial records as a witness in this case and you say let me see that and take it out of his hand, correct?

A.    Yes. But I think he's trying—

Q.    So, the answer is yes?

A.    It's not yes or no, no, sir.

Q.    Well, it is actually. Did you take his cell phone out of his hands as he

22

was looking at his financial records?

A.    At one point, yes sir.

Dkt. No. 16-2 at 56-57.

Based on this record, Guida has not shown that the trial court would have granted a suppression motion. Guida tries to liken this case to *Riley v. California*, 573 U.S. 373 (2014), which was issued a few months before the suppression hearing. But the trial court might have determined that there were meaningful differences between the alleged "search" of Guida's cell-phone and the searches at issue in *Riley*.

In *Riley*, officers seized cell phones incident to arrest and then examined the contents of the phones, including call logs, videos, and photographs. *See Riley*, 573 U.S. at 380. But here, the lead detective testified that Guida had pulled up financial records on his phone and was examining them – perhaps even trying to read them to him – in his presence. There is no indication that the lead detective viewed anything other than the records that Guida was already viewing in his presence and which were viewable from looking at the screen of Guida's phone. So, it is at least unclear whether Guida would have had a privacy interest in the records necessary to sustain a valid motion to suppress.

*United States v. Morgan*, 842 F.3d 1070 (8th Cir. 2016), though not on all fours, is instructive. There, as in this case, the defendant had access to his phone in the presence of officers. As the defendant scrolled through his contacts, he did not object as a detective watched his screen. *See id.* at 1073. And the detective wrote down some names and numbers. *Id.* The court found that there was no "search" of the phone

because "Morgan had no reasonable expectation of privacy when he voluntarily displayed his cell-phone screen in the presence of officers[,]" and he "did not object when the detective observed his activities." *Id.* at 1075. The defendant "spontaneously shared information about his contacts with a detective," which was unlike *Riley*, in which officers looked on their own through the contents of a cell phone. *Id.* (citing *Riley*, 573 U.S. at 379-80). All that occurred in Morgan's case was an officer's observation of something left in plain view, which generally involves no Fourth Amendment search. *Morgan*, 842 F.3d at 1075 (citing *Texas v. Brown*, 460 U.S. 730, 738 n.4 (1983); (*Kyllo v. United States*, 533 U.S. 27, 33 (2001)).

So too here, Guida's expectation of privacy in the financial records was arguably different than the evidence viewed in *Riley*, in which officers combed through the contents of a phone as opposed to viewing the information on screen that the defendant was viewing in front of officers. Thus, given the uncertainty of the law as applied to these facts – particularly whether one has a reasonable expectation in information on a phone screen viewed in front of officers – Guida has not shown that a suppression motion would have been granted and he therefore fails to show that this IAC claim has merit for purposes of *Martinez*. *See*, *e.g.*, *Sanders v. Marquis*, Case No. 1:17CV1950, 2019 WL 6792509, at *8 (N.D. Ohio Oct. 31, 2019) ("In order to show that the failure to file a motion to suppress constitutes deficient performance, 'the meritorious nature of the motion must be so plain that 'no competent attorney would think a motion to suppress would have failed.'") (citing *Hendrix v. Palmer*, 893 F.3d 906, 922 (6th Cir. 2018); quoting, in turn, *Premo v. Moore*, 562 U.S. 115, 124 (2011)).

And to the extent that Guida is, in this application, challenging the lead detective's apparent description of events, i.e., that Guida was viewing the records in his presence and the lead detective simply viewed those records without undertaking a more thorough search of the cell-phone, a factual dispute like that also underscores why Guida has not shown that the motion would have been granted. Put simply, he fails to show that the trial judge would have believed his version of events. *See*, *e.g.*, *Burgess v. United States*, No. 2:07-CV-1283, 2010 WL 1643989, at *6 (S.D. Ohio Apr. 22, 2010) (refusing to grant habeas relief on a failure-to-file-suppression motion IAC claim where the petitioner's uncorroborated version of events "would simply have pitted his credibility against that of the two police officers," so it was "not at all clear that a motion to suppress would have been successful").

Further, even if Guida could establish that an illegal search occurred, there is evidence in the state-court record tending to show that the financial records would have been discovered anyways. During the motion to suppress hearing, the lead detective testified that Guida willingly gave him his credit card and debit card information, which led to the lead detective following up on the gas-station transaction and obtaining information that Guida now claims is "fruit of the poisonous tree." Specifically, the lead detective stated that:

> I asked him did you make any purchases anywhere to validate it and he said, yes. I said, well, that would be easy to verify because we have to establish where you were at to get you eliminated. How did you make them, cash or debit? He said debit or credit card, whatever it was. He opened his billfold and said here are my cards I used. You are welcome to do with them whatever you want to. I took the numbers, made a phone call. I exited the room and, I can't remember, but I asked other detectives to follow up on those transactions. Those transactions led to

25

> an interesting transaction that occurred at RaceTrak gas station just a
> few hours prior to us finding her vehicle on fire.

Dkt. No. 16-2 at 17.

Thus, even if there was an illegal search of Guida's phone, because it appears that any information lead detective obtained through that search was also discovered through an independent source untainted by any constitutional violation, Guida has still not shown that a motion to suppress would have been successful, or, accordingly, that his trial counsel was ineffective for failing to file one. *See Sanders*, 2019 WL 6792509, at *8.

And finally, even if Guida could show that the motion to suppress the financial records from his cell phone would have been granted, he has not shown a "reasonable probability" that the verdict would have been different. *Kimmelman*, 477 U.S. at 375. Even without evidence of the financial records showing the purchase of the gas cannisters shortly before the murder, and even excluding video footage corroborating those transactions, ample evidence implicated Guida for the murder: the victim, Guida's girlfriend, was found in a burning vehicle with license plates registered to Guida; a subsequent autopsy showed that the victim's death was caused by strangulation and she was dead before the fire started; the location data in Guida's cell phone records was consistent with the State's theory that Guida killed the victim, drove her car to a gas station to purchase gas while her body was inside the car, and then drove to the location where the burned car was found; the victim's son testified that, on the day of the murder, he looked under the door to the victim's bedroom and saw Guida on top of the victim, fighting; the victim's son testified that he heard the

victim say that she could not breath, and then she stopped moving and was silent (testimony that he admitted was different than what he previously told a forensic examiner); and Guida testified in his defense and admitted lying to the lead detective during the interview, but offered a new version of events in which he denied killing the victim. *See Guida*, 2016 WL 2905147, at *1-2.

Because Guida has not shown that the failure-to-file-a-suppression-motion IAC claim has some merit, *Martinez* is inapplicable and the claim is procedurally defaulted.

### (ii)    *Failure to Request Daubert/Kelly Hearing*

Guida claims that his trial attorney was ineffective for not seeking a hearing to determine whether the State's expert's scientific testimony – which opined that Guida's whereabout and movement at pertinent times could be determined through his cell phone records and data – was reliable. *See* Dkt. No. 3 at 7; Dkt. No. 4 at 6. The TCCA adopted the findings of the habeas trial court, which recommended denying this claim for several reasons. It specifically noted:

> [Guida] claims that trial counsel was ineffective for failing to request a *Daubert/Kelly* hearing to have Agent Sedwick establish the authenticity of his testimony and investigate if the FBI in any of its trial appearances has ever provided any relevant technical or scientific studies to support its expert testimony.
>
> …
>
> [Guida] fails to meet his burden to show that his trial counsel rendered ineffective assistance of counsel when they did not file a *Daubert* motion with regard to the state's expert witness.
>
> Guida does not allege what effect the filing of a *Daubert* motion would have been.

Trial counsel states that he felt that the cellular data evidence and Agent Sedwick's testimony was the most favorable evidence for [Guida] presented at trial. Trial counsel states that he was able to illustrate, without question, that cellular data did not and could not put [Guida] within 6 miles of the offense location. He was able to use the State's expert analysis to support his theory that the record could not place [Guida] anywhere close to the location where the victim was found.

The Court finds that trial counsel made a deliberate strategy to use the State's witness as a trial strategy to illicit certain information favorable to [Guida].

[Guida] fails to prove by a preponderance of the evidence that counsel's performance was constitutionally deficient and that they were not acting as reasonably competent attorneys, and that their trial strategy was not within the range of competence of attorneys in criminal cases when they failed to request a *Daubert* hearing.

*See* Dkt. No. 11-1 at 93-96.

Thus, the habeas trial court found Guida's trial counsel credible and determined that the decision not to seek a *Daubert* hearing was a matter of trial strategy. These two factual findings are presumed to be correct and may only be rebutted through clear and convincing evidence. *See*, *e.g.*, *Wardrip v. Lumpkin*, 976 F.3d 467, 477 (5th Cir. 2020) (explaining that the state habeas court's determination that counsel's action was a matter of trial strategy was a factual finding that should be judged for reasonableness); *see also Wood v. Allen*, 558 U.S. 290, 301 (2010); *Vollmer v. Davis*, 673 F. App'x 406, 412 (5th Cir. 2016) (per curiam) ("The state habeas court's decision to credit counsel's affidavit is entitled to deference...") (citing 28 U.S.C. § 2254(e)(1)). Guida presents nothing like that here.

And, considering the determination that the decision not to seek a *Daubert/Kelly* hearing was a matter of trial strategy, Guida fails to show that the

TCCA's rejection of this claim was an unreasonable application of *Strickland*. Again, a "conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir. 2006). Guida's trial counsel decided not to move to disqualify the State's expert because aspects of the expert's testimony on cross examination were potentially helpful to Guida's case. And the trial transcript shows that Guida's trial counsel was able to thoroughly cross examine the State's expert and obtain helpful testimony. *See* Dkt. No. 12-25 at 30-100. The decision not to seek a *Daubert/Kelly* hearing under such circumstances is not so "ill chosen that it permeates the entire trial with obvious unfairness." *Virgil*, 446 F.3d at 608. Guida fails to show that the TCCA's rejection of this IAC claim was an unreasonable application of *Strickland*.

### (iii)   *Failure to Call Expert Witness*

Guida claims that his trial counsel should have called an expert witness related to "cell-phone tower technology." Dkt. No. 3 at 7; Doc. No. 4 at 10. The Fifth Circuit has repeatedly counseled that "complaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (citing *Bray v. Quarterman*, 265 F. App'x 296, 298 (5th Cir. 2008) (per curiam)). "Thus, to prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was

available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Id.* (citations omitted). This requirement pertains to both uncalled expert and lay witnesses. *Id.* (citations omitted).

> The habeas trial court noted in its findings and conclusions that:

> The Court finds that [trial counsel]'s affidavit reflecting that he advised [Guida] of the pros and cons of using an expert as well as the pros and cons of introducing and arguing their points through the State's expert is worthy of belief. [Trial counsel's] assertion that he explained his trial strategy to [Guida] and that [Guida] agreed not to rely on an expert to assist or testify to the cellular data is worthy of belief.

> [Guida] presents no affidavits or other evidence to establish what the substance of any expert testimony would have been and how it would have benefitted his defense. [Guida] presented no evidence of any expert's willingness or availability to testify at trial.

> [Guida] fails to show what any further investigation and evidence would have revealed. [Guida] has not presented any evidence of what would have been revealed that reasonably could have changed the result of this case.

Dkt. No. 12-45 at 95-96. As noted, Guida has not shown that the habeas trial court's finding that his trial counsel's affidavit was credible was clearly wrong or even unreasonable. And based on that affidavit, it is apparent that attacking the State's expert through cross examination –as opposed to rebuttal expert testimony – was a matter of trial strategy. Guida has not explained how that decision was "so ill chosen that it permeates the entire trial with obvious unfairness." *Virgil*, 446 F.3d at 608. And the record does not show that the decision was ineffective, either. Instead, Guida's trial counsel used a lengthy cross examination of the State's expert that showed an understanding of the weak points in the expert's testimony and effectively

highlighted those. *See* Dkt. No. 12-25 at 30-100; *see also Boyle v. McKune*, 544 F.3d 1132, 1139 (10th Cir. 2008) ("Boyle has also failed to show why counsel needed to obtain any additional information from expert medical witnesses. Counsel's cross-examination of the prosecution's expert nurse witnesses evidenced a sufficient understanding of the nature of the evidence against Boyle and its potential weaknesses."); *Hamilton v. Lee*, 94 F.Supp.3d 460, 479 (E.D.N.Y. 2015) (finding no ineffective assistance of counsel for failing to call an expert witness where trial counsel "adequately challenged the prosecution's [expert witness] on cross-examination and in his summation").

Further, Guida cannot show prejudice because he cannot show, beyond speculation, that his proposed expert witness would have testified at trial. Though Guida did present a proposed cell-phone tower-technology expert at the motion for a new trial, the proposed expert admitted that numerous courts found him unqualified to testify as an expert. *See* Dkt. No. 11-1 at 110. And there is no evidence that this proposed expert could have testified at Guida's *trial. See Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010) (experts required to state that they could and would have testified at original trial even where they otherwise state they would be willing to testify in future proceedings). "Given this complete lack of necessary evidence, [Guida] cannot establish prejudice under *Strickland*." *Hooks v. Thaler*, 394 F. App'x 79, 83 (5th Cir. 2010) (per curiam).

The TCCA's rejection of the IAC claim premised upon the failure to obtain expert testimony was not an unreasonable application of *Strickland*.

**(iv)    Failure to Seek Franks Hearing**

Guida claims his trial counsel was ineffective for failing to seek a *Franks* hearing regarding allegedly false statements that the lead detective made in probable-cause affidavits. *See* Dkt. No. 3 at 8. At issue are two statements. One was the lead detective's statement in support of an arrest warrant that "[The victim's] [c]hildren stated they heard their mother and suspect arguing Wednesday [Dec. 19] which was the last time anyone spoke to or can confirm [the victim] was alive." Dkt. No. 4 at 14. The other statement was in support of a search warrant and again referenced the supposed December 19 argument between Guida and the victim. The lead detective stated that "Max [the victim's son] stated his mom yelled 'Stop choking me'" and that Max heard gurgling sounds. Guida contends both statements are inaccurate. *See* Dkt. No. 4 at 14-15.

An affidavit used to support a search or arrest warrant is presumed to be valid. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). The affidavit's veracity may be attacked by showing deliberate falsehood or reckless disregard for the truth by the affiant. *Id.* "To meet this burden, the challenger must make a substantial showing that (1) allegations in a supporting affidavit were deliberate falsehoods or made with a reckless disregard for the truth, and (2) after the false statements are removed or the improper omissions added, the affidavit is not sufficient to support a finding of probable cause." *Garcia v. Thaler*, Civil Action No. H-08-3673, 2010 WL 793691, at *7 (S.D. Tex. Mar. 5, 2010) (citing *Moreno v. Dretke*, 450 F.3d 158, 169-70 (5th Cir. 2006)). "The defendant bears the burden of showing, by a preponderance of the

evidence, that a misstatement was made with more than mere negligence." *Id.* (citing *United States v. Runyan*, 290 F.3d 223, 234 n.6 (5th Cir. 2002)). If the defendant establishes the allegation of perjury or reckless disregard by a preponderance of the evidence, and the affidavit's remaining content is insufficient to establish probable cause, then "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 155-56.

In recommending that this claim be rejected, the habeas trial court made the following findings:

> In his second ground of error, [Guida] claims that trial counsel was ineffective for failing to request a *Franks* hearing to challenge false and conflicting statements in his arrest warrant affidavit and a search warrant affidavit…[Guida] also asserts that the arrest warrant affidavit included information that the complainant's children stated that they heard their mother arguing with him before they went to bed and that was the last time anyone can confirm her being alive. [Guida] asserts that the search warrant affidavit includes statements that one of the complainant's children heard the victim yell stop choking me and then heard gurgling sounds.

> [Guida] fails to include evidence of the affidavits executed in support of the search and arrest warrants.

> Even if [Guida] is able to allege that certain statements were technically inaccurate, there is nothing in the record that indicates that [Guida] can make a nonconclusory allegation that the affiant made any such misstatements intentionally or with reckless disregard for their truth. Allegations of negligent or innocent mistake are insufficient, and the allegations must be more than conclusory.

> The Court finds that there is no evidence that the affiant intentionally or recklessly misrepresented any statements regarding…the children's statements, or [Guida]'s statements.

> Any allegation of ineffectiveness must be firmly rooted in the record.

[Guida] does not make his required showing that any procedural mistake in not requesting a *Franks* hearing was prejudicial. Therefore, no relief is warranted.

Dkt. No. 12-45 at 84-85. This determination – accepted by the TCCA – does not run afoul of 28 U.S.C. § 2254(d). The record is devoid of evidence that any misstatements were deliberately false or offered with reckless disregard for their truth. And given that lack of evidence, Guida cannot show that "the state district judge would have granted a request for a *Franks* hearing or that petitioner would have prevailed had the state district judge held a *Franks* hearing." *Garcia*, 2010 WL 793691, at *7. Thus, Guida fails to show that the TCCA's rejection of this claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

### (v)    *Ineffective Assistance of Appellate Counsel*

Guida claims that his appellate counsel was insufficient for failing to argue on direct appeal that Guida was a "suspect deserving of *Miranda*" at the time of his initial interrogation at the police station preceding his arrest. Dkt. No. 3 at 8; Dkt. No. 4 at 12.

"The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal." *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989) (citing *Jones v. Barnes*, 463 U.S. 745, 751-53 (1983)). Counsel has a professional duty to choose among potential issues, according to his or her judgment as to their merit and his tactical approach to maximize the likelihood of success on appeal. *See Jones*, 463 U.S. at 752. Thus, to prove ineffective assistance of

34

appellate counsel, a petitioner must show that the decision not to raise an issue on appeal was objectively unreasonable. *See United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003) (citing *Strickland*, 466 U.S. at 687). And prejudice in this context requires the petitioner to show a reasonable probability that he would have prevailed on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000).

Guida's appellate counsel provided an affidavit in the state habeas proceedings in which he stated the following:

> In my first ground of appeal, I urged that the trial court reversibly erred in denying Mr. Guida's motion to suppress his police interrogation. I explained that though Mr. Guida's questioning was a custodial interrogation, Mr. Guida was never given *Miranda* warnings.
>
> I understand Mr. Guida's application for a writ of habeas corpus to now complain that, in support of this ground, I did not show that Mr. Guida was a suspect prior to questioning. I am not sure that this is accurate – in the Statement of Facts section of the brief, I noted that the victim's body was found in a vehicle with license plates registered to Mr. Guida, and that prior to Mr. Guida's questioning, the lead detective "filed away for reference" that Mr. Guida owned an SUV similar to the one seen near where the victim's body was found. In any event, though, I imagine I focused more on the circumstances of the questioning itself – in my opening brief, on whether it could be characterized as "overt questioning," and in my reply brief, on whether a reasonable, innocent person would have believed that his freedom of movement was restrained to the degree associated with an arrest – because, as I understand the law, those are the determining factors in whether *Miranda* warnings were required. As the State noted on page 12 in its brief in response, the Supreme Court has described it as "well settled…that a police officer's subjective view that [an] individual under questioning is a suspect, if undisclosed does not bear upon the question whether the individual is in custody for purposes of *Miranda*." *Stansbury v. California*, 511 U.S. 318, 324 (1994).

Dkt. No. 12-45 at 100-101. And, in finding that Guida's appellate IAC claim should be denied, the habeas trial court stated as follows:

> The Court finds that [appellate counsel']s affidavit, reflecting that he urged that the trial court reversibly erred in denying the motion to suppress the police interrogation because the questioning was custodial and [Guida] was never given his *Miranda* rights, is worthy of belief.
>
> The Court finds that [Guida] has failed to show by a preponderance of the evidence that appellate counsel was objectively unreasonable in failing to argue that he was a possible suspect who deserved *Miranda* warnings.
>
> The Court also finds that [Guida] has failed to meet his burden of showing a reasonable probability that, but for counsel's failure to raise the issue, he would have prevailed on appeal. Therefore, relief is not merited.

Dkt. No. 12-45 at 81-83.

Guida fails to show here that the TCCA's rejection of this claim was an unreasonable application of *Strickland*. As noted, the pertinent inquiry for purposes of *Miranda* is whether the interrogation is custodial – not an officer's subjective belief that the individual is a suspect. *See Stansbury*, 511 U.S. at 324. So, even if Guida's appellate counsel did not focus on whether the lead detective viewed Guida as a suspect during the interrogation, this was not necessarily error. Guida fails to show that his appellate counsel misunderstood the law or erred in some other fashion, much less that the result of the appeal would have been different had the brief focused on the subjective suspect designation by the lead detective.

### B. Fourth Amendment Claims

Guida claims that his Fourth Amendment rights were violated when his cell-site location data was obtained from the wireless carrier with a subpoena instead of a warrant. *See* Dkt. No. 3 at 6. But, "[i]t is well settled law that a claim challenging the admission of evidence at trial pursuant to an unconstitutional search and seizure is

36

not cognizable in a federal habeas proceeding if the state has provided the opportunity for a full and fair litigation of the claim." *Meachum v. Stephens*, Civ. A. No. H-13-0140, 2014 WL 972210, at *8 (S.D. Tex. Mar. 12, 2014) (citing *Stone v. Powell*, 428 U.S. 465, 481-82 (1976)). "The United States Court of Appeals for the Fifth Circuit has held that such a search and seizure claim cannot be reviewed after the petitioner has been provided an opportunity to challenge the search and seizure regardless of whether he has taken advantage of it." *Id.* (citing *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002); in turn citing *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978))). "[I]t is the existence of state processes allowing an opportunity for full and fair litigation of fourth amendment claims, rather than a defendant's use of those processes, that serves the policies underlying the exclusionary rule and bars federal habeas corpus consideration of claims under *Stone*." *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980).

Because "Texas affords a process for criminal defendants to challenge an illegal search and seizure by filing a motion to suppress under Article 28.01 of the Texas Code of Criminal Procedure," *Meachum*, 2014 WL 972210, at *8, and because Guida's trial counsel had the ability to file a motion to suppress related to this cell-site location data, and because Guida was able to challenge the legality of this search and seizure on direct appeal, *Guida*, 2016 WL 2905147, at *1, Guida's "habeas Fourth Amendment [-based challenges are] barred and [should] be dismissed" with prejudice. *Meachum*, 2014 WL 972210, at *8 (citing *Andrews v. Collins*, 21 F.3d 612, 631 (5th Cir. 1994) (in turn citing *Stone*, 428 U.S. at 494)).

This same logic bars any other Fourth Amendment claim that Guida seeks to present in this federal habeas action, such as a claim that his Fourth Amendment rights were violated by the lead detective's search of his cell phone at the initial interrogation.

## C. Due Process Claims

Guida claims that the State violated his due process rights by using false testimony from the victim's son at trial and withholding impeachment evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). *See* Dkt. No. 3 at 8-9; Dkt. No. 4 at 17-20

Regarding the claim that the State violated Guida's due process rights by eliciting false testimony from the victim's son at trial, the undersigned agrees with the State that Guida procedurally defaulted this claim. In these proceedings, Guida claims that the victim's son's testimony at trial was false because it differed from his forensic interview. Dkt. No. 3 at 8; Dkt. No. 4 at 17-19. But Guida did not present this specific claim in his PDR or state habeas petition. Instead, in his state habeas petition, Guida claimed that the *lead detective* presented false testimony during *pre-trial* proceedings. Dkt. No. 11-1 at 115-122. "The exhaustion requirement is not satisfied if the prisoner presents new legal theories or factual claims in his federal habeas petition." *Nobles*, 127 F.3d at 420. Thus, Guida did not exhaust his presentation-of-false-testimony due process claim.

And because the Texas abuse of the writ doctrine would preclude him from raising this claim to the TCCA now, it is procedurally defaulted and barred from review here

38

unless Guida can show cause and prejudice or a fundamental miscarriage of justice to excuse the default. *See Hughes v. Quarterman*, 530 F.3d 336, 341 (5th Cir. 2008); *see also* TEX. CODE CRIM. PROC. art. 11.07, § 4. Because Guida fails to show that any of those exceptions apply, his due process claim stemming from the supposed perjured testimony of the victim's son at trial is procedurally defaulted.

In his final ground for relief, Guida claims that his due process rights were violated when the victim's son informed the State that he lied to forensic investigators and then the State failed to disclose this to the defense before trial. *See* Dkt. No. 3 at 9.

Under *Brady v. Maryland*, 373 U.S. 83 (1963), "due process requires that the prosecution disclose evidence that is both favorable to the defendant and material to guilt or punishment." *Floyd v. Vannoy*, 894 F.3d 143, 161 (5th Cir. 2018) (per curiam) (citing *Brady*, 373 U.S. at 87); *see id.* at 161-62 ("This duty to disclose exists irrespective of a request from the defense, *United States v. Agurs*, 427 U.S. 97, 107 (1976), and extends to all evidence known not just to the prosecutors, but 'to the other others acting on the government's behalf in the case, including the police,' *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).").

"A successful *Brady* claim has three elements: 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *Rocha v. Thaler*, 619 F.3d 387, 393 (5th Cir. 2010) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)); *see also*

*Floyd*, 894 F.3d at 162 (identifying *Brady's* three requirements as suppression, favorability, and materiality). The materiality prong of *Brady* requires a showing of a reasonable probability of a different result absent the suppression of favorable information. *Coleman v. Thaler*, 347 F. App'x 53, 56 (5th Cir. 2009). "A 'reasonable probability' of a different result is…shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)).

And a federal court reviewing a state court's denial of a *Brady* claim under Section 2254 must "determine whether there is any reasonable theory, consistent with clearly established federal law as determined by the Supreme Court, to support the state courts' conclusions." *Floyd*, 894 F.3d at 162.

The habeas trial court described this claim and its reasons for finding it meritless, as follows:

> During his forensic interview, [the victim's son] told the interviewer that he heard his mother say that she could not breath during an argument between Guida and her in their bedroom. [The victim's son] told the interviewer that he looked under the door and could not see his mother. He explained that he could only see [Guida]. At trial, [the victim's son] testified that he could see his mother's feet and a little of her legs because [Guida] was sitting on her legs and kneeling over her. [Guida's] trial counsel questioned [the victim's son] on the inconsistent testimony. [The victim's son] testified that he lied to the forensic interviewer because he was scared. When questioned by [Guida's] counsel whether he told anyone that he lied, [the victim's son] testified that he told the trial prosecutor a couple of weeks before when they were talking about the case and that he told his uncle that he did not explain everything to the interviewer.
>
> [Guida's] counsel requested that the Court make a determination as to whether a *Brady* violation occurred and requested that the Court grant a mistrial upon an inquiry and determination of a violation. The State

responded that [the victim's son] never informed him that he lied to him or the forensic interviewer. The State asserted that during the course of the interview that [the victim's son] only brought to light more detail. The State argued that there was never any information that was either exculpatory or impeaching.

…

[The victim's son's] testimony was not the only testimony linking [Guida] to the crime. The victim's body was found in a burning vehicle with license plates registered to [Guida]. The autopsy showed that the victim's death was caused by strangulation and that the victim was dead before the fire started. Police discovered surveillance video that showed [Guida] purchasing two plastic gas canisters at a gas station. [Guida] testified in his defense and admitted to lying to Detective Ellzey during an interview. [Guida] then offered a new version of events.

The record shows that [Guida's] counsel used inconsistencies in [the victim's son's] testimony as evidence before the jury even without disclosure from the State that [the victim's son] had added additional facts to his statement. [Guida's] counsel entered the forensic interview containing a different statement from his trial testimony into evidence at trial with no objection from the State.

[Guida] fails to show how disclosure of the evidence complained of would have undermined confidence in the outcome of the trial. [Guida] does not show how any inconsistency in the testimony of [the victim's son] would have changed the outcome of the trial.

There is no reasonable likelihood that disclosure of the inconsistent statement could have affected the jury's verdict. The record supports the conclusion that the evidence is not material. Even if the statements by [the victim's son] were disclosed to defense counsel earlier, there is no reasonable likelihood that the jury's verdict would have changed. Defense counsel was able to impeach [the victim's son] by exposing inconsistencies in his statements, and it did not change the outcome. There was overwhelming evidence of guilt admitted at trial that was not subject to impeachment.

The witness statement was not exculpatory. Exculpatory evidence is that which may justify, excuse, or clear the defendant from alleged guilt. *Pena v. State*, 353 S.W.3d 797, 811 (Tex. Crim. App. 2011).

While the witness statement may have contained inconsistencies that was [sic] brought out at trial to impeach the witness, the statement did

41

> not contain information justifying, excusing, or clearing [Guida] from the alleged guilt.
>
> Because the alleged withheld information was not exculpatory, and because of the overwhelming evidence of guilt entered at trial that was not subject to impeachment, the witness statement evidence was not material. There is not a reasonable probability that, had the inconsistent witness statement been disclosed to the defense prior to trial, the result of the proceeding would have been different.

Dkt. No. 12-45 at 89-94.

As the habeas trial court noted, ample evidence besides the victim's son's testimony implicated Guida. And Guida's counsel was able to impeach the victim's son on cross examination regarding discrepancies between his trial testimony and his statement, even without knowing that the victim's son had earlier admitted to the State that he misstated details in his statement. Because the TCCA's determination that Guida failed to show materiality under *Brady* was reasonable, the undersigned finds that its rejection of this claim was neither contrary to, nor did it involve an unreasonable application of, clearly-established federal law. *See Smith v. Cain*, 565 U.S. 73, 76 (2012) (undisclosed evidence "may not be material if the State's other evidence is strong enough to sustain confidence in the verdict"); *Neal v. Vannoy*, 2021 WL 1212663, at *13 (E.D. La. Mar. 30, 2021) (explaining that, on federal habeas review, the court assesses whether the state court's *Brady* determination resulted in a decision that is contrary to, or involved an unreasonable application of, clearly established federal law).

## Recommendation

The Court should deny Guida's application for a writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

SO ORDERED.

DATED: June 6, 2022.

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE